UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| AMBER S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 3:20cv639 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

2. The claimant has not engaged in substantial gainful activity since March 1, 2016, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, status post L4-L-5 fusion and spinal cord stimulator implantation; and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: alternate sitting and standing after 45 to 60 minutes; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; frequent overhead reaching; and avoiding wet, slippery surfaces, work at unprotected heights, and work around dangerous moving machinery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 7, 1979, and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2016, through the date of this decision (20 CFR 404.1520(g)).

(R.17 -26 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on April 19, 2021. On May 31, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on June 15, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff was born on February 7, 1979. (R. at 66). At the time of her filing date, she was

38 years old. (*Id.*) Plaintiff has a high school diploma. (*Id.* at 38). She has past relevant work as a Plumber Supervisor, Mail Carrier, and Nursing Assistant. (*Id.* at 24).

On December 23, 2016, Plaintiff presented to OSMC for orthopedic follow up on her previous, 2013 lumbar fusion at L4-5. (R. at 289). Plaintiff complained of continued lower back pain with intermittent radiation into her legs despite multiple injections and narcotic medications since surgery. The examining physician, Dr. Joseph Caldwell, opined that her November lumber MRI demonstrated mild foraminal stenosis at L5-S1 status post lumber fusion L4-L5. (R. at 292). With regard to further treatment, he opined as follows:

> I do not feel that a revision spine surgery would be of significant benefit. She likely has some nonstructural spine pain and radicular symptoms related to the surgery and scar tissue. She has been offered a spinal cord stimulator. I feel this is a reasonable option to consider. She was very distressed about not having any narcotic pain medication. Although I do not normally condone longer-term narcotic use, it is reasonable to continue these medications while she is pursuing this stimulator.

*Id.*

One month later, three weeks after undergoing radiofrequency ablations of the nerve roots, Plaintiff presented to the emergency room at Lutheran Hospital and complained of radiating back pain with numbness all the way to her toes. (R. at 297). She informed the attending clinician that she could only walk for about 15 minutes before needing to sit down in her wheelchair. On examination, the examiner observed reflexes were "diffusely absent." (R. at 298). An MRI only demonstrated post-surgical changes and Plaintiff was discharged with instruction to continue to follow pain management. (R. at 300-301).

Plaintiff attended physical therapy at Peak Performance from November of 2016 through April of 2017. (R. at 325-361). During that time, therapists observed diminished left patellar

5

reflexes (R. at 348); abnormal sensation of the left thigh (R. at 348); and diminished lumbar range of motion (R. at 348). They hypothesized Plaintiff's leg pain was likely due to "lumbar instability. (R. at 355).

On April 27, 2017, Plaintiff presented to Dr. Suseela Dorvari for a primary care appointment at the V.A. (R. at 459). She complained of continued back pain radiating to her legs and causing severe mobility issues, as well as fecal and urinary incontinence. The physician noted Plaintiff required a walker for ambulation, had a full-time in-home aid who assisted her, and request a referral to prosthetics so she could get bars put up in her shower. (*Id.*). During the examination, Dr. Dorvari noted Plaintiff was "very uncomfortable sitting" and had to change positions frequently throughout her appointment to alleviate pain. (R. at 460). Dr. Dorvari diagnosed Failed Back Syndrome. (*Id.*).

On July 6, 2017, Plaintiff presented to prosthetics at the V.A. while slightly limping and using a rollator walker. (R. at 429). The examiner noted Plaintiff required a wheelchair, walker and cane intermittently for ambulation and a shower chair for bathing. *Id*. Plaintiff has 90% service-connected V.A. Disability. The clinician scheduled a "home visit" for two weeks after her appointment. (R. at 430).

On October 6, 2017, Plaintiff presented to Dr. Scott Ehmen at the request of the Disability Determination Bureau for a consultative examination. (R. at 1018). Dr. Ehmen observed widespread tenderness along the spine; diminished range of motion of the spine; "needs assistance to get onto the table"; "Can't lay down due to pain"; "gait is slow and she uses wheel chair she has brought for balance"; decreased range of motion of the bilateral hips; diminished range of motion of the left knee; left foot swelling; discomfort while seated; rigid standing posture; abnormal tactile

sensation of both lower extremities; antalgic gait; "gait is unsteady, shuffling in room without assistance. Gait is steady walking easily when pushing against small wheelchair." (R. at 1022). Dr. Ehmen opined,

> Patient is able to stand/walk at least 2 hours in an 8 hour day. Patient is not able to lift over 10 pounds occasionally. Patient is able to lift under 10 pounds frequently, Patient does need to alternate sitting and standing frequently. Patient will be able to walk short distances for short times. Probably standing and walking for up to 10-15 minutes. Patient is able to perform fine and gross movements effectively. However, with her back pain, poor mobility, and extreme inflexibility she will not be able to push or pull effectively against more than light resistance. Most activity will likely be sedentary light duty.

(R. at 1022-1023).

On February 27, 2018, Plaintiff presented to Dr. Heath Fervida for a psychological consultative examination. (R. at 1607-1608). Dr. Fervida opined "she does present with symptoms of PTSD, and appeared to down play the reality of her PTSD symptoms as well as other symptoms of anxiety that are direct reactions to her physical condition."(*Id*.). He went on to conclude "[Plaintiff's] daily routines do not appear to be well-established. She needs a great deal of support from others to accomplish her daily tasks. Her daily activities appear to be complicated by her physical condition. Her ability to sustain these efforts on a daily basis appears to be substantially impaired." (*Id*.). He diagnosed her with PTSD. (*Id*).

In April, Plaintiff presented to Summit Pain Management for her low back, bilateral knee and foot pain. (R. at 1627). While an MRI was effectively normal other than surgical changes, Plaintiff demonstrated positive bilateral straight leg raise, facet tenderness, facet loading, diminished sensation of the bilateral feet, and paraspinal spasms. (R. at 1628). The treating Physician's Assistant, Thomas Straub, diagnosed lumbar facet arthropathy, failed back syndrome,

7

and chronic pain syndrome. (*Id*.).

On April 16, 2018, Dr. Scott Ehmen conducted an additional consultative examination of Plaintiff. (R. at 1636). He observed diminished range of motion of the lumbar spine and bilateral hips; "difficulty with standing and sitting"; moderate spasms' decreased tactile sensation of lower extremities, antalgic gait, and decreased sensation to light touch bilateral feet.. (*Id*. at 1636-1638). He opined

> Patient is able to communicate effectively and will not have difficulty maintaining focus and concentration. Patient is not able to stand/walk at least hours in an 8 hour day. Patient is able to lift over [] pounds occasionally. Light duty work with lifting about 20 pounds. Due to pain and limited ROM as noted this will have to be above the waist. Pushing and pulling activity against light resistance. Patient is able to lift under 10 pounds frequently. Patient does need to alternate sitting and standing frequently. Patient is able to perform fine and gross movements effectively. Pushing and pulling forcibly will be limiting. Can do non-prolonged activity with mild exertion.

(R. at 1639).

On May 5, 2018, Plaintiff returned to Summit Pain Management for follow up on her widespread pain. Examination again revealed positive straight leg raise testing bilaterally, facet tenderness, decreased sensation diffusely in the bilateral feet, facet loading, and paraspinal spasms. (R. at 1657). Identical findings were noted a month later. (R. at 1653).

On July 18, 2018. Plaintiff underwent the implantation of a spinal cord stimulator at Ball Memorial Hospital. (R. at 1670). By August 16, 2021, Plaintiff informed Summit that she was having the V.A. ex-plant the stimulator due to inefficacy and it causing her to be hospitalized just a few days prior. (R. at 1643-1644).

On May 20, 2019, Plaintiff appeared for a hearing in Fort Wayne, Indiana before the ALJ Genevieve Adamo of the Fort Wayne Office of Disability Adjudication and Reviews (ODAR). (R.

8

at 34). Plaintiff's attorney, Megan Little, and vocational expert, Scott Silver, also attended the hearing. (*Id*.). Plaintiff testified that she currently sought work, but had been unsuccessful in finding any jobs which would allow her to shift positions from sitting to standing at the rate she required. (R. at 43). She testified she could not perform a job which required her to sit for prolonged periods. (*Id*). She explained that after sitting 45 minutes her legs would go numb and she would not be able to even stand up. (R. at 43-44). Plaintiff testified her home was equipped with handicap equipment for toileting and bathing, and that she had required a home health aid to assist her with things like dressing and household chores. (R. at 47-48). She further informed the ALJ that she experienced urinary incontinence one to two times per day. (R. at 49).

Upon her attorney's questioning her, Plaintiff testified she had experienced falls in which her back simply could not support her weight. (R. at 53). She explained her home was equipped with a wheelchair ramp which she required after 15 minutes of standing. (R. at 55-56). She explained she occasionally experienced fecal incontinence in addition to urinary incontinence, and that she had to change clothes at least once a day as a result. (R. at 56-57).

After Plaintiff's attorney concluded her questions, the ALJ called a vocational expert to testify. After he classified Plaintiff's past relevant work as a plumber, a transportation security officer, an elementary school teacher, a home health aide and a mail carrier, the ALJ asked him to consider whether a hypothetical individual with prescribed limitations could perform a significant number of jobs in the national economy. The ALJ prescribed the individual the following limitations:

> Sedentary exertional level with never climbing ladders, ropes or scaffolds. Occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling. Must avoid wet, slippery surfaces, unprotected heights, and

9

dangerous moving machinery, perform frequent overhead reaching.

(R. at 60). The vocational expert testified that such an individual could perform the jobs of charge account clerk, order clerk and pin or clip fastener in significant numbers in the national economy. (R. at 61). The ALJ the asked if an individual's need for a sit/stand option every 45 to 60 minutes would have any effect on their ability to perform any of the aforementioned jobs. The vocational expert testified that it would not. Finally, the ALJ asked the vocational expert the employer tolerance for off-task time and absences. He responded that off task time over ten percent of the workday or absences exceeding one day per month would not be tolerated by employers. (R. at 61-62). The vocational expert testified that a need for a cane, walker or wheelchair would not preclude performance of the aforementioned jobs. (R. at 63-64).

In support of remand, Plaintiff argues that the ALJ erred in offering only perfunctory analysis with regard to whether Plaintiff's combined impairments met or were medically equivalent to listing of presumptive disability 1.04(c). At Step Three, an ALJ is required to determine whether the claimant meets or equals any of the listed impairments found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(iii). For each listed impairment, there are objective medical findings and other specific requirements which must be met to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(3), 416.925(c)(2)-(3). When a claimant satisfies all such criteria, that person is deemed presumptively disabled and entitled to benefits. *Barnett*, 381 F.3d at 668; 20 C.F.R. §§ 404.1525(a), 416.925(a), 404. 1525(c)(3) and 416.925(c)(3). Even if a claimant's listed impairment does not satisfy each requirement of the specified elements of the listing, it can result in a finding of disability if the record contains "other findings related to your

impairment that are at least of equal medical significance to the required criteria" or if "the findings related to [a combination of] impairments are at least of equal medical significance to those of a listed impairment." 20 C.F.R. §§ 404.1526, 416.926. "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 668. The Seventh Circuit has held that "the ALJ may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation only so long as there is no contradictory evidence in the record." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006); citing *Scheck v. Barnhart*, 357 F.3d 697, 700-701 (7th Cir. 2004).

Here, Plaintiff argues that the ALJ's analysis of whether Plaintiff's combined impairments met or medically equaled Listing 1.04(c) was lacking in a requisite logical and accurate bridge between her conclusion and the evidence in the record. Plaintiff contends that, without even specifically mentioning 1.04(c) or its relevant criteria, the ALJ perfunctorily concluded Plaintiff did not meet or medically equal Listing 1.04(c) on bases which were both misleading and irrelevant to the specific criteria of Listing 1.04(c). (R. at 21). The ALJ wrote,

> Despite the claimant's continuing complaints of back pain, MRIs show that the fusion has healed without any complications. There is full strength of her extremities with no dermatomal sensory loss. Even though the claimant uses ambulatory aids, including a wheelchair, she has a normal gait. Although the claimant is obese, this has not caused any additional difficulties moving about as evidenced from her physical examinations. Therefore the requirements of Listing 1.04 are not met or equaled.

(R. at 21). Listing 1.04(c) requires exhibition of the following criteria to meet the listing:

> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in

1.00B2b.

(Appendix 1 to Subpart P of 20 C.F.R. 404 § 1.04(c)). Plaintiff claims that the outcome-determinative question with regard to whether Listing 1.04(c) is met or medically equaled is whether Plaintiff's impairments of the spine result in an "inability to ambulate effectively." At the time the ALJ decided Plaintiff's case, the Social Security Administration provides the following definition and examples of ineffective ambulation:

> examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

(Appendix 1 to Subpart P of 20 C.F.R. 404 § 1.00(B)(2)(b)). Plaintiff argues that he ALJ's limited analysis did not even mention the aforementioned criteria or the possibility Plaintiff could not consistently "ambulate effectively." Instead, she initially discounted the existence of Plaintiff's back pain at all in stating "despite the claimant's continuing complaints of back pain, MRIs show that the fusion has healed without any complications." (R. at 21). Plaintiff contends that this conclusion is inaccurate. The Seventh Circuit has long held that an ALJ "may not simply ignore evidence," *Myles v. Astrue*, 582 F3d. 672, 676 (7th Cir. 2009), ignore "entire lines of contrary evidence," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (internal citations omitted), or "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596, F.3d 419, 425 (7th Cir. 2010). When the Court is unable to discern whether the ALJ considered the record as a whole, remand is necessary. *Id*.; *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th

Cir. 1996)(citations omitted). It is well settled that meaningful judicial review requires an adjudicator to build a logical and accurate bridge between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir, 2009); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

Here, Plaintiff points out that while Plaintiff's post-surgery imaging has shown mild foraminal stenosis and intact hardware post L3-L4 fusion surgery, her treating physicians have deemed her 2013 laminectomy a failure and have consistently diagnosed "failed back surgery syndrome" and "post-laminectomy" syndrome. (R. at 460, 1628). Three years after her surgery, her treating neurosurgeon, Dr. Caldwell, opined "She likely has some nonstructural spine pain and radicular symptoms related to the surgery and scar tissue." (R. at 292). Thus Plaintiff concludes that the premise on which the ALJ based her conclusion of no meeting or medically equivalence to listing 1.04(c), that Plaintiff's status post-spine surgery was "without complication," is simply not supported by the evidence, which the ALJ failed to even mention in her consideration of the listing.

The ALJ also states that "there is full strength of her extremities with no dermatomal sensory loss." (R. at 21). While it is true Plaintiff did consistently exhibit full strength in her lower extremities, the ALJ had no expert support or regulatory basis for concluding muscle strength was the deciding factor as to whether a claimant meets or medically equals Listing 1.04(c). Most significantly, diminished lower extremity muscle strength is not a clinical finding mentioned, let alone required, by 1.04(c). Furthermore, while not necessarily a requirement of Listing 1.04(c) either, the ALJ conclusion Plaintiff never demonstrated "sensory loss" is false as well. Plaintiff exhibited a lack of or abnormal sensation in the lower extremities on multiple occasions. (R. at

348, 1022, 1628, 1636-1638, 1657). Additionally, Plaintiff exhibited absent reflexes in the lower extremities. (R. at 298, 348)

The ALJ also concluded that while "the claimant uses ambulatory aids, including a wheelchair, she has a normal gait." (R. at 21). Plaintiff's treating physicians deemed her use of a cane, wheelchair and walker to be medically necessary and prescribed them to her through the U.S. Department of Veterans Affairs prosthetic division. (R. at 429-460). Plaintiff contends that the notion her gait was normal despite her need for these assistive devices is simply another demonstrably false conclusion on which the ALJ relied in deciding Plaintiff did not meet or medically equal Listing 1.04(c). Plaintiff's gait was noted to be antalgic or abnormal a significant portion of the time. (R. at 429, 1022, 1636-1638) At an examination with her primary care physician, Plaintiff's gait was noted to be abnormal even with the assistance of a rollator walker. (R. at 429). The physician opined the furthest distance Plaintiff could walk at once, even with her walker, was 50 feet. (R. at 430). At her first consultative examination, Plaintiff's gait was only noted to be "normal" when she could use a wheelchair effectively as a makeshift walker. Without such an assistive device, the consultative examiner noted her gait to be "shuffling" and "unsteady." (R. at 1022). The examiner noted she required assistance just to get up and down from the examination table. (R. at 1018). While it is clear Plaintiff required a walker or wheelchair most of the time, the ALJ provided no fact-based analysis as to whether such a need constituted an "inability to ambulate effectively".

In response, the Commissioner argues that diagnostic testing of Plaintiff's lumbar spine repeatedly demonstrated a lack of nerve root or spinal cord compromise, or evidence of lumbar spinal stenosis. The Commissioner further argues that had Plaintiff successfully demonstrated the

14

presence of lumbar spinal stenosis, to meet Listing 1.04(c) Plaintiff must also show that the stenosis resulted in pseudoclaudication.

The record is clear that Plaintiff underwent a lumbar fusion at L4-L5, a procedure intended to relieve compromise of a nerve root or spinal cord. (R. at 289). That procedure resulted in a diagnosis of "Failed Back Syndrome," which Plaintiff points out is a condition which the NIH concludes is simply a diagnosis made when "chronic radicular neuropathic pain" or pain caused by nerve root compromise is unresolved by surgery. The ALJ failed to acknowledge this evidence of the nerve root compromise which Commissioner points out is a requirement of 1.04(c). As Plaintiff has argued, the ALJ inaccurately concluded Plaintiff's back surgery was "without complication" and effectively resolved her nerve compromise. Plaintiff continues to argue that the ALJ ignored diagnoses of failed back syndrome and that Plaintiff continued to experience "radicular symptoms" or symptoms caused by nerve root compromise, three years after her back surgery. (R. at 292). The ALJ was required to explain why the aforementioned evidence, in combination with the evidence supportive of an inability to ambulate, did not meet or medically equal the requirements of Listing 1.04(c).

Plaintiff further points out that, as noted above, even her impairment does not satisfy each requirement of the specified elements of the listing, it can result in a finding of disability if the record contains "other findings related to your impairment that are at least of equal medical significance to the required criteria" or if "the findings related to [a combination of] impairments are at least of equal medical significance to those of a listed impairment." 20 C.F.R. §§ 404.1526, 416.926." In other words, if it was Plaintiff's "failed back syndrome" which resulted in her inability to ambulate effectively as opposed to up-to-date imaging of her spine specifically

15

demonstrating a compromised nerve root and/or cord, a finding of disability, or a logical and accurate explanation for not making such a finding, should have ensued. The ALJ failed to provide any meaningful evaluation of this possibility even though she was compelled to do so. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

Accordingly, this Court finds that remand is warranted so that the ALJ can properly consider all of the criteria and evidence related to whether Plaintiff's impairments meet or equal Listing 1.04(c).

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: June 21, 2021.

                                               s/ William C. Lee
                                               William C. Lee, Judge
                                               United States District Court